UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States of America,   08-CR-0017
                            (CPS)

   - against -

Jose Sanchez,               MEMORANDUM
                            OPINION & ORDER

                Defendant.

----------------------------------------X
SIFTON, Senior Judge.

On January 10, 2008, defendant Jose Sanchez ("Sanchez"), also known as Carlos Luis Resto Morales, Carlos Luis Morales Resto, and Carlos Morales, was indicted by a grand jury on the following counts: (1) one count of making false statements in an application for a passport in violation of 18 U.S.C. § 1542; (2) one count of fraud and misuse of a birth certificate issued by the Commonwealth of Puerto Rico in violation of 18 U.S.C. § 1546(a); (3) one count of improper entry by an alien in violation of 18 U.S.C. § 1325(a); and (4) one count of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1),(b), and (c)(10). On March 12, 2008, defendant pleaded guilty to the second and fourth counts of the indictment before Magistrate Judge Roanne L. Mann pursuant to a plea agreement. Presently before this Court is defendant's motion seeking to withdraw his guilty plea and requesting a pre-trial ruling that 18 U.S.C. § 1028A(a)(1) requires the government to prove that the defendant knew that the identification document he used belonged to another person. For

the reasons discussed below, defendant's motion is granted.

## Background

The following facts are drawn from the indictment, the record of the proceedings before the magistrate judge, and the parties' submissions in connection with this motion.

Between January 2006 and September 2007, defendant allegedly possessed and used a Commonwealth of Puerto Rico birth certificate and Social Security card, both bearing the name "Carlos Luis Morales Resto," as well as multiple New York State Department of Motor Vehicles Identification Cards, a Commonwealth of Puerto Rico driver's license, and a New York State Benefit Identification Card, all bearing the name "Carlos Morales" and containing the defendant's photograph.

On January 17, 2006, defendant Sanchez allegedly made the following false statements in an application for a United States passport: (1) his name was Carlos Morales, (2) he was born in Puerto Rico, and (3) he was issued the Social Security number listed in his application.

On September 18, 2007, defendant Sanchez allegedly attempted to enter the United States by using an unlawfully obtained Commonwealth of Puerto Rican birth certificate and a New York State Department of Motor Vehicles Identification Card in the name of Carlos Luis Morales Resto and Carlos Morales, respectively, and misrepresenting to United States Customs and

Border Protection officers that he was a United States citizen. The government states that during the inspection process, after waiving his *Miranda* rights, the defendant admitted that his real name was Jose Sanchez and that he was born in the Dominican Republic.

On January 10, 2008, defendant Sanchez was indicted by a grand jury on the four counts outlined above.

On March 12, 2008, pursuant to this Court's referral order, defendant Sanchez appeared before Magistrate Judge Mann and entered guilty pleas to the second and fourth counts of the indictment.

Count Two states:

> On or about September 18, 2007, within the Eastern District of New York, the defendant . . . did knowingly and intentionally use, attempt to use and possess a document prescribed by statute and regulation for entry into the United States, to with: a Commonwealth of Puerto Rico birth certificate, knowing said document was unlawfully obtained.

Count Four states:

> In or about and between January 2006 and September 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant . . . during and in relation to the crime charged in Count Two, did knowingly and intentionally possess and use, without lawful authority, means of identification of another person . . .

After the plea was entered, Judge Mann asked the defendant whether he knew if the documents he attempted to use belonged to an actual person, to which defendant responded, "I really don't know if the person existed or not." Transcript of Guilty Plea

("Tr.") at 21. Judge Mann then asked defendant's counsel if the aggravated identity theft charge required the defendant to know that the documentation belonged to an actual person, to which defendant's counsel responded that the defendant only had to know that he was not using his own identity and that the government had to prove that the document belonged to an actual person. *Id.* at 23. Judge Mann noted that district courts in other circuits have taken different positions on whether the government is required to prove that the defendant knew that the documents belonged to an actual person in order to meet its burden on an aggravated identity theft charge. *Id.* at 25. Following this exchange, Judge Mann stated that she would defer the issuance of a recommendation to this Court whether to accept defendant's plea so that defendant's counsel could research the issue. *Id.* at 26.

On March 14, 2008, Judge Mann issued a Memorandum and Order which discussed the circuit split on the scienter requirement of 18 U.S.C. § 1028A(a)(1) and provided the parties with additional time to determine how they would like to proceed.

On March 19, 2008, this Court issued an order directing the parties to show cause as to why this Court should not accept the guilty plea entered before the magistrate judge.

On March 31, 2008, defendant filed the instant motion seeking to withdraw his plea.

## Discussion

18 U.S.C. § 1028A states in relevant part:

Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). The term of imprisonment must run consecutively with the sentence for the underlying felony. 18 U.S.C. § 1028A(b). Felony violations enumerated in section 1028A(c) include "any provision contained in chapter 75 (relating to passports and visas)," 18 U.S.C. § 1028A(c)(7), and "any provision contained in chapter 8 of title II of the Immigration and Nationality Act (8 U.S.C. 1321 et seq.)(relating to various immigration offenses)." 18 U.S.C. § 1028A(c)(10).

"Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well." *United States v. Gayle,* 342 F.3d 89, 92 (2d Cir. 2003)(citations omitted). "However, where statutory language is ambiguous a court may resort to the canons of statutory interpretation and to the statute's legislative history to resolve the ambiguity." *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 57 (2d Cir. 2003). If "a reasonable doubt persists about a statute's intended scope even after resort to 'the language and structure, legislative history,

and motivating policies' of the statute," *U.S. v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)(quoting *Moskal v. United States*, 498 U.S. 103, 108(1990)), the court may resort to the rule of lenity as a "'last resort.'" *Id.*(quoting *United States v. Hescorp, Heavy Equip. Sales Corp.*, 801 F.2d 70, 77 (2d Cir. 1986)). "The rule of lenity provides that ambiguities concerning legislative intent in criminal statutes should be resolved in favor of the accused." *United States v. Figueroa,* 165 F.3d 111, 119 (2d Cir. 1998). However, the rule of lenity "does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose." *Caron v. United States,* 524 U.S. 308, 316 (1998).

There is a split in the circuits as to the extent of the scienter required by 18 U.S.C. § 1028A(a)(1), with the Court of Appeals for the District of Columbia and two district courts in other circuits holding that the statute requires the government to prove that the defendant knew that the means of identification belonged to another person. *Compare U.S. v. Villanueva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008); *United States v. Hairup*, 2008 WL 471710 (D.Utah 2008); and *United States v. Beacham*, 399 F.Supp.2d 1156 (W.D.Wash. 2005); with *United States v. Hurtado,* 508 F.3d 603 (11th Cir. 2007)(per curiam), *petition for cert. filed* (February 13, 2008)(No. 07-9429); *United States v. Montejo*, 442 F.3d 213 (4th Cir. 2006), *cert. denied*, 127 S.Ct. 366 (2006); *United States v. Mendoza-Gonzalez,* ---F.3d ----, 2008 WL 819161

(8th Cir. 2008); and *U.S. v. Godin*, 489 F.Supp.2d 118 (D.Me. 2007). The Court of Appeals and district courts within this circuit have not yet addressed the scienter requirement of 18 U.S.C. § 1028A(a)(1).

The dispute over the extent of a defendant's knowledge under 18 U.S.C. § 1028A(a)(1) stems from the statute's use of the adverb "knowingly" followed by the adjacent phrase "transfers, possesses, or uses, without lawful authority, a means of identification of another person." Defendant argues that the adverb "knowingly" modifies the adjacent phrase in its entirety, requiring the government to prove that the defendant knew that the means of identification belonged to another person. The government argues that "knowingly" only modifies the adjacent verbs "transfers, possesses, or uses" and that it is not required to prove that the defendant knew that the means of identification belonged to another person.

Rules of grammar do not definitively resolve the issue. *See e.g.* THE CHICAGO MANUAL OF STYLE 185 (15th ed. 2003)(an "adverb should generally be placed as near as possible to the word it is intended to modify"). Because 'knowingly' is a mental state adverb courts have found that it can modify words in a statute even though they are not immediately adjacent. *See e.g., Villanueva-Sotelo,* 515 F.3d at 1239; *Liparota v. United States*, 471 U.S. 419, 424 (1984)(finding that text alone did not resolve

the knowledge requirement of a statute imposing criminal penalties for unlawful usage of food stamps and that the interpretations offered by both parties "would accord with ordinary usage"); *United States v. X-Citement Video, Inc.,* 513 U.S. 64 (1994)(interpreting statute prohibiting exchange of visual depictions of minor children engaged in sexually explicit conduct through interstate commerce); *see also Model Penal Code* 2.02(4)(1985)("When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such a provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears")).[1]

Several courts have ruled that the plain meaning of the statute supports the government's position that the adverb "knowingly" does not modify the entire phrase that follows. *See Montejo*, 442 F.3d at 215 (holding that with respect to Section

---

[1] Courts that have taken the position that "knowingly" does not modify the entire phrase have distinguished section 1028A(a)(1) from the statutes addressed by the Supreme Court in *Liparota* and *X-Citement Video*, because the underlying behavior that is the basis for a conviction under section 1028A(a)(1) is a felony, whereas the statutes in *Liparota* and *X-Citement* addressed otherwise innocent conduct. *Montejo*, 442 F.3d at 216; *Hurtado,* 508 F.3d at 609-610; *Mendoza-Gonzalez,* 2008 WL 819161, at *4. Based on this distinction, these courts have argued that the Supreme Court only intended the knowledge requirement to be extended when a statute would criminalize otherwise innocent conduct. *Id.* However, as the D.C. Circuit persuasively noted in *Villanueva-Sotelo*, the Supreme Court "has never held that avoiding [the criminalization of otherwise innocent conduct] is the only reason to" extend the knowledge requirement to modify the entire phrase of a statute. *Villanueva-Sotelo*, 515 F.3d at 1242. Rather, "courts may extend a mens rea requirement when ordinary tools of statutory interpretation-text, structure, purpose, and legislative history-compel that result." *Id*.

1028A(a)(1) "as a matter of common usage, 'knowingly' does not modify the entire lengthy predicate that follows it."); *Hurtado,* 508 F.3d at 609; and *Mendoza-Gonzalez,* 2008 WL 819161, at \*2. Other courts have found the meaning of the statute ambiguous and concluded that the statute's legislative history supports the defendant's position that the term "knowingly" modifies the entire phrase. *See Villanueva-Sotelo,* 515 F.3d 1234; *Hairup*, 2008 WL 471710; and *Beacham*, 399 F.Supp.2d 1156. The fact that different courts have reached opposing conclusions about the plain meaning of the statute tends to support a conclusion that the statute is ambiguous. *See Rabin v. Wilson-Coker,* 362 F.3d 190, 196 (2d Cir. 2004)("A statute is ambiguous if its terms are 'susceptible to two or more reasonable meanings.'")(quoting *Natural Res. Def. Council v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001)).[2] In all events, since the rules of grammar do not

---

[2] The government reiterates the dissent's position in *Villanueva-Sotelo* that reviewing 18 U.S.C. § 1546(a) *in pari materia* with section 1028A(a)(1) supports the conclusion that the meaning of section 1028A(a)(1) is unambiguous. 18 U.S.C. § 1546(a) criminalizes the actions of

> [w]hoever knowingly forges, counterfeits, alters, or falsely makes any . . . document prescribed by statute or regulation for entry into . . . the United States, or . . . uses . . . any such . . . document . . ., knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . .

18 U.S.C. § 1546(a). According to the government, reading section 1546(a) *in pari materia* with section 1028A(a)(1), the Court must conclude that if Congress had intended to require the same knowledge requirement in section 1028A(a)(1), "it would have phrased section 1028A(a)(1) as explicitly as it did section 1546(a)." *Villanueva-Sotelo,* 515 F.3d at 1257. However, assuming, without deciding, that the *in pari materia* doctrine applies, the statutes "are easily harmonized when read in tandem: defendants who use false [documents] are punished under the former statute . . . while those who know

definitively resolve the issue I conclude that the statute is ambiguous in that it is in fact susceptible to at least two reasonable interpretations.

Since I conclude that the meaning of section 1028A(a)(1) is ambiguous, I turn to the purpose and legislative history of the statute, bearing in mind the two distinct types of harms addressed by the statute, namely the harm to the person or persons deceived by the offender's misrepresentation and, second, the harm to the person whose identity is improperly used.

Section 1028A is titled "Aggravated Identity Theft," and was passed as part of the Identity Theft Penalty Enhancement Act ("the Act"), Pub.L. No. 108-275, 118 Stat. 831 (2004). The House Judiciary Committee Report ("the Report") accompanying the statute states that the purpose of the statute is to address "the growing problem of identity theft" and provide for "enhanced penalties for persons who steal identities to commit terrorist acts, immigration violations, firearms offenses, and other serious crimes." H.R.Rep. No. 108-528, at 3 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, 780. The Report defines identity theft and identity fraud as referring "to all types of crimes in which someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception . . . ." *Id.* at

---

that [document] belongs to someone else receive two additional years under the latter." *Id.* at 1247.

4, 2004 U.S.C.C.A.N. at 780. In addition to describing how identity thieves obtain personal information through "dumpster diving" and by accessing information collected for authorized purposes by their employers, the report also provides statistics about the number of victims of identity theft, the ways in which the victims' identities are used, together with the costs of identity theft to financial institutions and consumers. *Id.* The Report also provides a series of examples of offenders who "wrongfully obtain[ed]" another person's personal data. *Id.* at 5-6, 2004 U.S.C.C.A.N. at 781. In each of the examples, the offender knew that the means of identification belonged to an actual person. *Id.*

The title of the statute and the legislative history use the word "theft" to characterize the offense. An essential element of the crime of theft is the intent to deprive another person of property, requiring the defendant to know that the property acquired belonged to another. *See Godwin v. United States*, 687 F.2d 585, 588 (2d Cir. 1982). Considering the statute's language and the discussion in the legislative history of the harm caused to victims of identity fraud and the description of typical offenders, all of whom knew that they were stealing the identity of another person, I am persuaded that, when passing the statute, Congress was concerned both with the crime of theft of another person's identity, as well as the

deceitful use of means of identification belonging to another person.

In considering which interpretation of the statute best serves congressional intent, it is significant that under either interpretation a person who engages in aggravated identity theft is faced with enhanced punishment. That punishment should as a general matter not only reflect the seriousness of the offense, promote respect for the law and provide justice, but also afford adequate deterrence, effective correction and reform. *See* 18 U.S.C. § 3553(a)(2). Enhanced punishment of an individual who used an alias which unbeknownst to him happens to be the name of an actual person is not likely to deter another from inventing a name which happens to be that of an actual person. Nor does it seem entirely just or effective to subject a defendant to two years additional imprisonment for a circumstance (the fact that the false name chosen happened to belong to an actual person) over which the defendant has little control. Because the use of identification documents that happen to belong to another person would not satisfy the intent element of the crime of theft and would subject a defendant to an enhanced criminal penalty that may not serve the general purposes of criminal sentencing, I am persuaded that the more expansive interpretation of the statute

best serves its purpose.[3] Accordingly, I conclude that the extent of the scienter required by the statute makes it necessary for the government to prove that the defendant knew that the means of identification belonged to another person in order to sustain a conviction for aggravated identity theft.

Even if the tools of statutory construction did not resolve the issue of the statute's ambiguity, applying the rule of lenity, those ambiguities would have to be resolved in favor of the defendant since his reading of the statute is plausible.

Having ruled that 18 U.S.C. § 1028A(a)(1) requires the government to prove that the defendant knew that the means of identification belonged to another person, I turn to Sanchez's

---

[3] The government argues that requiring it to prove that the defendant knew the documents belonged to another person defeats the purpose of the Act, which according to the government was passed in order to make it easier to prosecute defendants who use the identity documents of another person. The government relies on the amendment of section 1028(a)(7) and the remarks of House Representative Carter, a sponsor of the Act, in support of its argument. Section 1028(a)(7) states "[w]hoever . . . knowingly transfers, possess, or uses, without lawful authority, a means of identification of another person with the intent to commit, or aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law. . . shall be punished as provided. . ." Section 1028(a)(7) was amended "to clarify that possession of the means of identification of another person with intent to commit an unlawful act can constitute a crime." H.R. Rep. 108-528, at 10, 2004 U.S.C.C.A.N. at 786. However, the language of the amendment to section 1028(a)(7) does not shed any light on Congress' intent with respect to the enactment of section 1028A(a)(1).
   The remarks made by Representative Carter also do not further the government's position. Representative Carter stated that the Act was passed in order to give the government "greater power" in prosecuting identity thieves by (1) creating "a new and separate crime . . .aggravated identity theft" and (2) not requiring the prosecutor to "prove the intent to use the false identity in a crime" so long as "the intent of the underlying crime is proven" thereby lessening "the burden on the prosecution, making convictions easier." *Id.* at 49, 2004 U.S.C.C.A.N. at 791. These remarks have little bearing on the issue at hand since the issue of knowledge is distinct from the issue of intent.

plea allocution. Because Sanchez stated under oath that he did not know whether the documents he used belonged to another person, I conclude that defendant's plea allocution does not satisfy the scienter requirement of 18 U.S.C. § 1028A(a)(1). Accordingly, defendant's motion is granted and his guilty plea is vacated and the jury will be instructed that they must find that the defendant knew that the identity he used was that of another person.[4]

**Conclusion**

For the reasons discussed above, defendant's motion is granted. The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
         April 30, 2008

         By:     /s/ Charles P. Sifton (electronically signed)
                                 United States District Judge

---

[4] Since defendant pled guilty to both Counts 2 and 4 in satisfaction of the indictment and pursuant to an agreement in doing so, the other charges against him would be dismissed, the vacatur of the plea to Count 4 requires that the defendant's plea to Count 2 be vacated as well.